E-FILED
Wednesday, 11 July, 2007  03:37:22 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN GROESCH, GREG SHAFFER and SCOTT ALLIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 04-3162 |
| CITY OF SPRINGFIELD, ILLINOIS, a municipal corporation, | ) ) ) ) ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant City of Springfield, Illinois' (City) Motion for Summary Judgment (d/e 19). On December 29, 2006, the City's summary judgment motion was granted in part and denied in part. See Opinion entered December 29, 2006 (d/e 26). By agreement of the parties, the matter was stayed pending the United States Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162 (2007). The Supreme Court issued its decision on May 29, 2007. On May 31, 2007, this Court directed the parties to

1

submit supplemental memoranda addressing the impact of Ledbetter on the present case. Text Order entered May 31, 2007. The parties have done so. Accordingly, the Court must now reconsider its December 29, 2006, Opinion on the summary judgment motion in light of Ledbetter. As set forth below, the City's Motion for Summary Judgment is now ALLOWED as to all claims. The Court vacates the portion of the December 29, 2006, Opinion that denied summary judgment.

## BACKGROUND

Plaintiffs Kevin Groesch, Greg Shaffer, and Scott Allin filed the instant lawsuit claiming that the City discriminated against them on account of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Counts I, III, and V). Plaintiffs also brought this suit under 28 U.S.C. § 1983 asserting that the City discriminated against them on the basis of race by treating them less favorably than a similarly situated African-American colleague in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Counts II, IV, and VI).

The facts of this case are more fully set forth in the December 29, 2006, Opinion. As such, the Court will only briefly restate the facts as they

apply here. The Plaintiffs in this case all had similar employment patterns. Plaintiff Groesch began his employment with the City's Police Department in June of 1981, but left in good standing in December 1988. On September 10, 1996, however, he returned to the City's employ as a patrol officer. Plaintiff Shaffer began his employment with the City's Police Department in January 1980 as a patrol officer, but left in good standing in July 1987. He, however, returned to the City's employ on July 6, 1993. Plaintiff Allin began his employment with the City's Police Department on January 7, 1980, but left in good standing on November 22, 1986. He later returned to the City's employ on January 9, 1989. When the Plaintiffs returned to the City's employ, they were not given credit for their prior years of service when their salary and benefits were calculated.

The Plaintiffs contended that the City treated their African-American colleague, Donald A. Schluter, more favorably than they were treated. Schluter started his employment with the City's Police Department on April 4, 1994, but left on November 12, 1999, while in good standing. On January 31, 2000, Schluter sent a letter to then Chief of Police John Harris, expressing his interest in returning to the City's employ. Chief Harris actively assisted Schluter in that effort. On March 28, 2000, the City

3

passed Ordinance 198.3.00 (the Schluter Ordinance) which enabled Schluter to return as a City patrol officer with his previous level of seniority. The Schluter Ordinance was solely applicable to Schluter and no one else.

On December 11, 2002, the Plaintiffs sent a letter to Chief Harris, requesting that they, too, be afforded the same treatment by having their prior years of service restored. Neither Chief Harris nor the City Council took any action with respect to the Plaintiffs' request. This Court stated in the December 29, 2006, Opinion that the adverse employment action in this case occurred in December of 2002, when the Plaintiffs renewed their requests for restoration of service and the City Council failed to act upon their request.[1]

On April 3, 2003, the Plaintiffs filed a complaint against the City in the Illinois Circuit Court for the Seventh Judicial District, alleging a violation of the equal protection clause of Article I, Section 2 of the Illinois Constitution of 1970. Unlike the Complaint filed with this Court, Plaintiffs did not allege in the state court complaint that they had suffered reverse

---

[1] The Court notes that the City erroneously asserts in its Supplemental Memorandum that the adverse employment action occurred on March 29, 2000, when the City passed the Schluter Ordinance. Defendant's Supplemental Memorandum (d/e 30), at 3.

4

racial discrimination. On November 10, 2003, the Circuit Court issued an order dismissing Plaintiffs' complaint as being time-barred. On July 22, 2004, the Illinois Appellate Court for the Fourth District affirmed the Circuit Court's decision. On July 27, 2004, Plaintiffs filed the instant lawsuit.

## ANALYSIS

The City previously moved to dismiss the Plaintiffs' Complaint, asserting, among other things, that the action was barred by the doctrines of res judicata and collateral estoppel due to Plaintiffs' unsuccessful state court action. In addressing whether the Plaintiffs' claims were so barred, this Court looked to Illinois law and determined that the requirements of res judicata had been satisfied. See Opinion entered February 1, 2005 (d/e 11), at 8-16. This Court, however, noted that Plaintiffs' claim that the City's violations of both Title VII and § 1983 arose anew with every paycheck they received made a principal difference in the Court's res judicata analysis. The Plaintiffs argued that every paycheck they received from the City constituted a separate, discriminatory action. This Court noted that the Seventh Circuit case law at that time supported the Plaintiffs' contention that every paycheck the City paid each Plaintiff was

5

a separate, discrete, potentially discriminatory act. Id. at 14. Accordingly, this Court stated in the December 29, 2006, Opinion that the City was entitled to summary judgment on Plaintiffs' claims for damages arising prior to April 3, 2003, and on Plaintiffs' claims arising before the date of the state trial court judgment on November 10, 2003, on the basis of res judicata.[2] This Court, however, noted that the Plaintiffs' remaining claims (namely, claims arising from allegedly discriminatory wages paid after November 10, 2003) were actionable, provided that they satisfied the relevant statute of limitations.

The Supreme Court in Ledbetter rejected the "paycheck accrual rule" relied upon by the Plaintiffs in this case, under which they argued that every paycheck they received constituted less favorable treatment than that afforded to Schluter. In rejecting the paycheck accrual rule, the Ledbetter Court stated that the continuing effects of past discriminatory actions cannot resuscitate claims that are time-barred.[3] In other words, paychecks

---

[2]The Court also wrote in the December 29, 2006, Opinion that the City was entitled to summary judgment as to Plaintiff Shaffer's claims for monetary damages accruing prior to January 19, 2005, based on the fact that, after Shaffer had filed for bankruptcy on January 19, 2005, the City purchased Shaffer's then existing claim from the Trustee in bankruptcy.

[3]In Ledbetter, the plaintiff complained that her employer discriminated against her in the payment of wages by paying her less than her male counterparts throughout

that are a mere reflection of past discriminatory actions are not sufficient to constitute a new violation under Title VII. The Supreme Court reasoned: "The EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." Ledbetter, 127 S.Ct. at 2169. Based on Ledbetter, all of Plaintiffs' claims (under Title VII and 42 U.S.C. § 1983) are therefore barred by res judicata. The Plaintiffs could have brought their federal claims of reverse racial discrimination claims as part of their April 3, 2003, state court action, but they failed to do so.[4]

---

her employment. She alleged that the pay disparity was a result of her supervisors' poor performance evaluations of her in the past and that such past performance evaluations had a detrimental affect on the amount of her pay throughout her employment. Rather than filing a charge of discrimination with the EEOC when the discriminatory actions arose, the plaintiff sat on her claims and did not file a charge with the EEOC until her retirement. The Supreme Court stated that the plaintiff could not prevail on her Title VII pay discrimination claims because she had failed to assert that the "decisionmakers acted with actual discriminatory intent either when they issued her checks during the EEOC charging period or when they denied her a raise in 1998." Ledbetter, 127 S.Ct. at 2167. In other words, the plaintiff had failed to promptly file her charge of discrimination with the EEOC at the time the discriminatory pay decisions giving rise to her claims arose.

[4]The Court notes that state courts have concurrent jurisdiction over both 42 U.S.C. § 1983 and Title VII claims. See Felder v. Casey, 487 U.S. 131, 139 (1988); Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, 826 (1990).

The Court also notes that even if Plaintiffs' Title VII claims were not barred by the doctrine of res judicata, the claims are untimely. According to Ledbetter, employees alleging pay discrimination under Title VII must file a charge with the relevant agency within either 180 or 300 days (depending on the state) of the alleged discriminatory action in order for their claims to be viable under Title VII.[5] As mentioned supra, this Court found in the December 29, 2006, Opinion that the adverse employment action in this case occurred in December of 2002. Plaintiffs filed their charge with the EEOC on March 2, 2004. Under Ledbetter, Plaintiffs can only recover for discriminatory actions that occurred between May 7, 2003, and March 2, 2004. The December 2002 adverse employment action, however, occurred outside the limitations period. The Plaintiffs have thus failed to allege any discrete, discriminatory actions that occurred within the 300-day charging period. Plaintiffs' Title VII claims are therefore untimely.

The Plaintiffs assert that their equal protection claims under § 1983 are timely because they were brought within the applicable limitations period, which is two years. The Plaintiffs are correct that, unlike their Title

---

[5] The Court notes that in Illinois, the charging period is 300 days rather than 180 days. Hall v. Bodine Elec. Co., 276 F.3d 345, 352-53 (7th Cir. 2002); 42 U.S.C. § 2000e-5(e)(1).

VII claims, their equal protection claims are timely. As noted supra, the adverse employment action in this case occurred in December of 2002, and the Plaintiffs filed this suit on July 27, 2004. Therefore, Plaintiffs' § 1983 action was brought within the two-year statute of limitations period. However, as explained supra, the Plaintiffs' equal protections claims under § 1983 are barred by res judicata. They could have been brought as part of the April 2003 state court action; res judicata applies to matters that could have been brought in an earlier suit if they arise from the same set of operative facts. After Ledbetter, it is clear that this lawsuit arises from the same set of operative facts as the April 2003 state court action. Thus, even though the § 1983 claims were filed within the applicable limitations period, they are barred by res judicata.

      The Plaintiffs next assert that the situation presented here is analogous to the one involved in Bazemore v. Friday, which the Ledbetter Court noted "stands for the proposition that an employer violates Title VII and triggers a new EEOC charging period whenever the employer issues paychecks using a discriminatory pay structure. But a new Title VII violation does not occur and a new charging period is not triggered when an employer issues paychecks pursuant to a system that is facially

9

nondiscriminatory and neutrally applied." Ledbetter, 127 S.Ct. at 2174 (internal quotations omitted); Bazemore, 478 U.S. 385 (1986) (*per curiam*). Plaintiffs' situation is not analogous to the one in Bazemore. As the Ledbetter Court explained, Bazemore involved a situation where the employer adopted discriminatory pay structures for service employees, one being "a white branch" and the other being a "Negro branch," with the latter receiving less pay. Ledbetter, 127 S.Ct. at 2172. Here, there is no discriminatory pay structure like the one present in Bazemore. The enactment of the Schluter Ordinance was a single act that afforded favorable treatment to one single individual. The situation presented in this case more closely mirrors the one presented in Ledbetter. As such, Bazemore does not help the Plaintiffs.

The Plaintiffs lastly contend that even if Ledbetter is dispositive of the issues presented here, it should not be applied retroactively to bar the instant action. The Plaintiffs rely on Anton v. Lehpamer, which they contend stands for the proposition that a change in controlling law concerning the applicable statute of limitations in a § 1983 claim should be applied prospectively. See Anton, 787 F.2d 1141 (7th Cir. 1986). Plaintiffs' reliance on Anton is misplaced. In Anton, the plaintiff filed suit under §

10

1983, alleging that various police officers violated his constitutional rights by using excessive force when they arrested him. The plaintiff had filed the lawsuit two years and one month following the event giving rise to his § 1983 claim (namely, the arrest). At the time the plaintiff brought his § 1983 action, it was timely because "federal courts in Illinois applied a five-year statute of limitations in all section 1983 actions." Id. at 1142. While the plaintiff's case was pending in the federal district court, however, the Supreme Court issued its decision in Wilson v. Garcia, finding that the "statute of limitations for all section 1983 actions is the state's personal injury statute of limitations[,]" which for Illinois is two years. Id.; see Wilson, 471 U.S. 261 (1985).

Relying on Wilson, the district judge granted the defendants' summary judgment motion, concluding that the plaintiff's § 1983 claims were untimely. On direct appeal, the Seventh Circuit, however, reversed concluding that Wilson should not be applied retroactively when a federal court in Illinois borrows the state's statute of limitations in a § 1983 action. Anton, 787 F.2d at 1141. In making this determination, the Seventh Circuit applied the three-prong test articulated by the Supreme Court in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971). Under Chevron Oil, to

11

determine whether a decision in a civil case should be applied prospectively only, courts must conduct a three-part inquiry, one of which is whether "the decision to be applied nonretroactively . . . establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Id. at 106.

Here, unlike Wilson, the Supreme Court in Ledbetter neither established a new principle of law nor decided an issue of first impression whose resolution was not clearly foreshadowed. The Ledbetter Court simply clarified when a cause of action accrues for purposes of disparate treatment pay discrimination claims under Title VII, by examining the EEOC charging deadline Congress set forth in Title VII and by relying on relevant Supreme Court case law. Anton therefore is inapplicable here.

More importantly, the Supreme Court in Harper v. Virginia Dept. of Taxation held that: "When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [its] announcement of the rule." Harper, 509 U.S. 86, 97

12

(1993).  The Harper Court further explained:

> When this Court does not reserve the question whether its holding should be applied to the parties before it, however, an opinion announcing a rule of federal law is properly understood to have followed the normal rule of retroactive application and must be read to hold . . . that its rule should apply retroactively to the litigants then before the Court.  Furthermore, the legal imperative to apply a rule of federal law retroactively after the case announcing the rule has already done so must prevai[l] over any claim based on a *Chevron Oil* analysis.

Id. at 97-98 (internal quotations and citations omitted).  The Seventh Circuit in Anton similarly noted that the general rule is that judicial decisions have retroactive effect.  Anton, 787 F.2d at 1143.  Here, the Court sees no reason to depart from the general rule set forth in Harper.  Based on Harper, therefore, Ledbetter must be given full retroactive effect in this case.

THEREFORE, as set forth above, Defendant's Motion for Summary Judgment (d/e 19) is now ALLOWED as to all claims.  The Court vacates the portion of the December 29, 2006, Opinion (d/e 26) that denied summary judgment and directs that judgment be entered in favor of Defendant.  The Court cancels the status conference set for July 16, 2007, at 9:00 a.m.  All pending motions are denied as moot.  The case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  July 11, 2007.

FOR THE COURT:

                                                 s/ Jeanne E. Scott
                                                 JEANNE E. SCOTT
                                      UNITED STATES DISTRICT JUDGE